O

                    **UNITED STATES DISTRICT COURT**

                    **CENTRAL DISTRICT OF CALIFORNIA**


| | |
|---|---|
| EMILE AUGUSTE and MAVIS MURTHY, | ) CV 17-6194-RSWL-PLAx ) |
| Plaintiffs, | ) **ORDER re: Plaintiffs'** ) **Motions in Limine Nos.** ) **1-2** [59-60]; **Defendant's** |
| v. | ) **Motions in Limine Nos.** ) **1-5** [62-66] |
| BMW OF NORTH AMERICA, LLC, a corporation; and DOES 1 through 10, inclusive,, | ) ) ) ) |
| Defendants. | ) ) ) |

Currently before the Court is Plaintiffs Emile Auguste and Mavis Murthy's ("Plaintiffs") Motions in Limine ("MIL") Nos. 1-2 [59, 60] and Defendant BMW of North America, LLC's ("Defendant") MIL Nos. 1-5 [62-66]. Having reviewed all papers submitted pertaining to these Motions, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** Plaintiffs' MIL #1 [59]; **DENIES** Plaintiffs' MIL #2 [60]; **DENIES** Defendant's MIL

#1 [62]; **GRANTS in part and DENIES in part** Defendant's MIL #2 [63]; **GRANTS** Defendant's MIL #3 [64]; **DENIES** Defendant's MIL #4 [65]; and **DENIES as MOOT** Defendant's MIL #5 [66].

## I. BACKGROUND

This case arises out of Plaintiffs' lease of a 2015 BMW M6 (the "Subject Vehicle") and Defendant's alleged violation of the Song-Beverly Consumer Warranty Act (Cal. Civ. Code §§ 1790 seq.) and breach of implied warranty of merchantability. Currently before the Court is Plaintiffs' and Defendant's Motions in Limine ("MIL") for the forthcoming trial currently set for March 19, 2019. Plaintiffs filed two MIL seeking the Court to:

MIL #1) Preclude any argument, evidence, and/or testimony regarding previous lemon law claims or requests for repurchase made by Plaintiffs;

MIL #2) Exclude testimony or evidence referring to or relating to Plaintiffs' non-possession of the Subject Vehicle due to repossession and/or lease expiration;

Defendant filed five MIL seeking the Court to:

MIL #1) Exclude the expert testimony of Dan Calef

MIL #2) Exclude evidence of concerns fixed or repaired in one visit by Defendant

MIL #3) Exclude evidence of concerns or nonconformities never presented to

| | Defendant |
|---|---|
| | MIL #4) Exclude expert or legal opinions |
| | MIL #5) Exclude the expert testimony of Randall Bounds |

**II. DISCUSSION**

**A.  Plaintiffs' MIL #1 is DENIED**

In **Plaintiffs' MIL #1**, Plaintiffs move to exclude any and all evidence, references to evidence, testimony, or argument regarding previous lemon law claims or requests for repurchase made by Plaintiffs. Plaintiffs argue that evidence of prior lemon law claims is irrelevant to whether Defendant violated the Song-Beverly Act as to the current Subject Vehicle, and that such evidence is inadmissible character evidence showing litigiousness and propensity to file similar lawsuits. Defendant argues that such evidence falls within Fed. R. Evid. 404(b)(2)'s exception as establishing Plaintiffs' intention, motivation, and knowledge in claiming that the Subject Vehicle was defective. Specifically, Plaintiffs made a prior repurchase request, but were denied, for a 2007 Maserati 425, and Defendant argues this demonstrates that Plaintiffs' intent in the current Action is to protect themselves from their financial obligations.

Ordinarily, the Court would find evidence of a prior repurchase request on an entirely different vehicle irrelevant to whether the current Subject Vehicle has suffered defects. However, the Maserati is

not wholly unrelated to the facts of this case. As shown in the lease, the Maserati was traded in by Plaintiffs when they entered into the lease for the Subject Vehicle. See Notice of Removal, Ex. D, Lease Agreement, ECF No. 1-5. At the time of trade-in, Plaintiffs owed $25,000 on the Maserati lease and BMW valued the vehicle at $7,000, leaving a net trade-in value of -$18,000. See id. The lease shows that the $18,000 value was added to Plaintiffs' costs on the lease for the Subject Vehicle. Id. At the very minimum, Plaintiffs' prior lease is relevant to the damages computation. Further, evidence that Plaintiffs made a repurchase request on the Maserati in conjunction with the evidence Defendant has put forth of Plaintiffs' failure to pay their lease payments on time and ceasing of payment altogether, could be relevant to establish a pattern in which Plaintiffs lease expensive cars and bring lemon law claims to avoid their financial obligations. This in turn could be relevant to show an intent and motivation of Plaintiffs in bringing this claim. Thus, the Court **DENIES Plaintiffs' MIL #1**.

**B.  Plaintiffs' MIL #2 is DENIED**

In **Plaintiffs' MIL #2**, Plaintiffs move to exclude any and all evidence, references to evidence, testimony, or arguments that relating to Plaintiffs' non-possession of the Subject Vehicle due to repossession and/or lease expiration. Plaintiffs' MIL

#2 is based on relevance, and that the probative value of such evidence is substantially outweighed by the danger of misleading the jury, confusing the issues, and unfair prejudice.

Plaintiffs' continued use of the Subject Vehicle nearly six months after the lease termination is relevant to the condition of the Vehicle, and is thus relevant to the larger issue of whether it was substantially impaired for Plaintiffs' Song-Beverly express warranty claim, and whether it was unfit for its ordinary purpose for Plaintiffs' breach of implied warranty claim. See Jones v. Credit Auto Ctr., Inc., 188 Cal. Rptr. 3d 578, 582-83 (Cal. Ct. App. 2015) (relying on record evidence that the vehicle at issue was driveable for over a thousand miles to find that there was no breach of implied warranty); Tietsworth v. Sears, Roebuck and Co., 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) ("However, [the plaintiff's] allegations of continued use of the Machine throughout the one-year warranty period belie her claim that it failed to serve its ordinary purpose."). Defendant seeks to limit such evidence to data of the Subject Vehicle's mileage, condition, and value at the time the lease expired on March 28, 2018, and at the time the vehicle was subsequently repossessed on September 13, 2018. Defs.' Opp'n to Pls.' MIL #2 3:11-17, ECF No. 69. Plaintiffs do not oppose any mention of the number of miles driven. Pls.' Reply ISO Pls.' MIL #2 2:24-25,

ECF No. 82. As such, the Court **DENIES Plaintiffs' MIL #2**.

**C. Defendant's MIL #1 is DENIED**

In **Defendant's MIL #1**, Defendant moves to exclude Plaintiffs' expert, Dan Calef, on the ground that he does not meet the requirements under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993).

Under Federal Rule of Evidence 702, expert testimony is admissible if it will assist a trier of fact to understand the evidence or determine a fact at issue so long as (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness had applied the principles and methods reliably to the facts of the case. An expert may be qualified either by "knowledge, skill, experience, training, or education," and the advisory committee notes emphasize that Rule 702 is "broadly phrased and intended to embrace more than a narrow definition of qualified expert." Thomas v. Newton Intern. Enters., 42 F.3d 1266, 1270 (9th Cir. 1994).

The Supreme Court in Daubert, 509 U.S. at 593-95, determined that scientific evidence will assist the trier of fact if: (1) the scientific theory or technique can be and has been tested; (2) the theory or technique has been subject to peer review; (3) there is a known or potential error rate; and (4) the theory is

6

generally accepted in the relevant scientific community.  However, the test is a flexible one, and the assessment of reliability must be made in the context at hand.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert, 509 U.S. at 597.  The proponent of an expert bears the burden of establishing the expert's qualification as an expert on the subject of his testimony.  United States v. Booth, 669 F.2d 1231, 1239 (9th Cir. 1981).

Defendant argues that Mr. Calef is not qualified because his experience is not specific to BMW repairs or vehicles.  Mr. Calef has been an automotive service technician for thirty-nine years.  See Def.'s MIL #1 Ex. C, Mr. Calef's Curriculum at 7, ECF No. 62-4.  Mr. Calef testified at his deposition that while his experience is as a general technician, he does recall working on BMW vehicles that came through while at Selma Chevrolet and he rebuilt parts of BMW engines at Orange Engine and Parts.  Declaration of Laura E. Goolsby ("Goolsby Decl."), Ex. A, Calef Dep. 20:4-17, 22:8-15, ECF No. 74-2.  Mr. Calef also testified that he has taken a lot of courses and even taught a class relating to electronics and computer-controlled diagnostics like the iDrive system, one of the alleged defects at issue, and that he is "well-versed" with the system.  Id. at 12:14-25.  While Mr. Calef has not taken any courses specific to BMW vehicles, he stated he has "taken a lot of courses over the years that deal

7

with all of the systems that are on [the Subject Vehicle] and many, many others" because "there's nothing special about" the Vehicle from a diagnostic or repair perspective. Id. at 14:14-15:5. The Court finds this "lays at least the minimal foundation of knowledge, skill, and experience required in order to give 'expert' testimony" on potential defects and their significance in this case. Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1269 (9th Cir. 1994). "If a witness has passed this threshold, the question of the degree of expertise or knowledge goes to the weight of the testimony rather than to its admissibility." Jeffer, Mangels & Butler v. Glickman, 286 Cal. Rptr. 243, 249 (Cal. Ct. App. 1991).

Defendant next argues that Mr. Calef's report does not meet the requirements of Fed. R. Civ. P. 26(a)(2). An expert report must have "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). The report must also provide all "the facts and data considered by the witness in forming" his or her expert opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). Defendant argues that Mr. Calef's opinions in the report will not assist the trier of fact because they are not based on sufficient facts or data, nor are they the product of reliable principles or methods; rather, Defendant argues Mr. Calef's report includes conclusory statements that "regurgitate" issues from repair orders

with no explanation of how and why he has formed his opinions.

Although Defendant's argument has some merit, at this time, the Court finds that this too goes to the weight of Mr. Calef's testimony, rather than its admissibility. It appears that Mr. Calef's testimony is not wholly based on conclusory assertions, but on his review of repair orders, service bulletins, discovery responses, other correspondence, and his professional experience and own observations from inspecting the Subject Vehicle. A trial court's "gatekeeping" obligation to admit only expert testimony that is both reliable and relevant is a critical one. Nevertheless, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010). Accordingly, the Court **DENIES Defendant's MIL #1.**

**D.    Defendant's MIL #2 is GRANTED in part and DENIED in part**

In **Defendant's MIL #2**, Defendant moves to exclude evidence of concerns fixed or repaired in one visit, specifically found in the following repair orders: (1) McKenna BMW Repair Order Nos. 278459, 289119, and 301305 all for routine maintenance; (2) BMW of Monrovia Repair Order No. 402656 for repair of turbo coolant feed line, trunk lid, and monitor iDrive screen; (3) BMW of Monrovia Repair Order No. 406423 for routine

maintenance and repair wheel; and (4) BMW of Monrovia Repair Order No. 408378 for washout and repair turbo coolant return line. Def.'s MIL #2 at 2:1-11.

1. <u>Song-Beverly Claim</u>

Section 1793.2(d)(2) of the California Civil Code provides:

> If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22,[1] to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B).

"The statute does not require the manufacturer to make restitution or replace a vehicle if it has had only one opportunity to repair that vehicle." <u>Silvio v. Ford Motor Co.</u>, 135 Cal. Rptr. 2d 846, 847 (Cal. Ct. App. 2003). Each repair visit is a "repair opportunity" for purposes of the Song-Beverly Act. <u>Oregel v. American Isuzu Motors, Inc.</u>, 109 Cal. Rptr. 2d 583, 589-590 (Cal. Ct. App. 2001). However, "the plain language of § 1793.2(d)(2) is not so narrow as to apply only to discrete defects; it also applies to related defects." <u>Shamilian v. BMW of North America, LLC</u>, No. CV 16-6020 DSF (JPRx), 2017 WL 7156245, at *1 (C.D. Cal. Sept. 18,

---

[1] Section 1793.22(e)(2) defines a "new motor vehicle" as "a new motor vehicle that is bought or used primarily for personal, family, or household purposes . . . or other motor vehicle sold with a manufacturer's new car warranty."

10

2017) (internal citation omitted) (under a federal statute similar to Song-Beverly, "[a] warrantor does not receive a 'reasonable number of attempts' to fix each discrete defect; it receives 'a reasonable number of attempts' to fix the underlying defects and any manifestation of that defect"). Here, Plaintiffs agree with Defendant that any defect presented to Defendant only one time would not be actionable, but, Plaintiffs argue that the evidence at issue concerns potential symptoms of a defect, and that seemingly unrelated symptoms can have the same underlying cause.

The Court finds Plaintiffs' arguments persuasive. There is "no reason that a 'nonconformity' may not include an entire complex of related conditions." <u>Robertson v. Fleetwood Travel Trailers of California, Inc.</u>, 50 Cal. Rptr. 3d 731, 743 n.11 (Cal. Ct. App. 2006). "Issues of the existence and nature of an alleged nonconformity are questions of fact for the jury." <u>Id.</u> at 743 n. 12. Plaintiffs allege that they experienced concerns with the Subject Vehicle including, but not limited to, recurrent coolant leaks and malfunction of the iDrive system. Compl. ¶ 8, ECF No. 1-2. BMW of Monrovia Repair Order Nos. 402656 and 408374 include complaints relating to the turbo coolant feed and return lines, and the iDrive screen. Whether these complaints have the same underlying cause or relate to the same overarching defects identified in prior or subsequent complaints is a question of fact,

11

and Defendant's arguments are ones for the jury, not for this Court on a motion in limine. See Self v. FCA US LLC, No. 1:17-cv-01107-LJO-SKO, 2018 WL 5999613, at *5-6 (E.D. Cal. Nov. 15, 2018) (denying a MIL to exclude evidence of single repair attempts for isolated issues as a question of fact for the jury).

However, there are complaints that are seemingly unrelated to any prior or subsequent complaint, namely the issues of the trunk lid not closing and the repair wheel (discussed in BMW of Monrovia Repair Order Nos. 402656, 406423). Plaintiffs did not oppose the exclusion of this evidence. Plaintiffs also complained of a lag in acceleration between gears that is unrelated to other complaints and dismissed as user error.[2] The Court thus **GRANTS in part Defendant's MIL #2** as to any evidence of these three complaints, and the reports shall be redacted accordingly. The Court **DENIES in part Defendant's MIL #2** as to all other complaints in the Repair Orders that may be relevant to prior or subsequent complaints as a question of fact for the jury to decide. See Shamilian v. BMW of North America, LLC, 2017 WL 7156245 (C.D. Cal. Sept. 18, 2017) (granting in part MIL as to defects unrelated to any prior or subsequent defect and denying in part MIL

---

[2] Plaintiff Auguste admitted he was incorrectly testing the power, which was causing the purported lag issue, and that when he properly tested the power he did not experience such an issue. Declaration of Monica N. Hernandez ("Hernandez Decl.") ¶ 5, ECF No. 79-1; id., Ex. D, Auguste Dep. 36:14-37:14, ECF No. 79-5.

12

as to defects related to prior or subsequent defects because they are relevant to whether the defendant was afforded a "reasonable number of attempts").

Finally, as to McKenna BMW Repair Order Nos. 278459, 289119, and 301305—for "routine maintenance"—Plaintiffs argue that these are relevant to rebut Defendant's affirmative defenses of third-party causation, unauthorized or unreasonable use, and conduct voiding warranty as evidence of proper maintenance by Plaintiffs. Defendant actually identified these three repair orders as evidence it plans to rely on to establish these three defenses in the Final Pretrial Conference Order. See FPTC Order 9:5-7; 10:4-18, 11:2-17, ECF No. 75. While routine maintenance is not a repair attempt for purposes of the express warranty claim under § 1793.2, to the extent Defendant attempts to argue poor maintenance by Plaintiffs in support of any of those defenses, these repair orders are relevant. As such, the Court **DENIES in part Defendant's MIL #2** as to the three McKenna BMW Repair Orders for routine maintenance (Nos. 278459, 289119, 301305).

2. <u>Breach of Implied Warranty Claim</u>

Plaintiffs argue that the above referenced repair orders are also relevant for their claim for breach of implied warranty under Cal. Civ. Code § 1791.1, for which it is not even required that the manufacturer have one opportunity to fix the vehicle. See Mocek v.

Alfa Leisure, Inc., 7 Cal. Rptr. 3d 546, 547 (Cal. Ct. App. 2003). However, section 1791.1 only applies to "consumer goods," defined as "any new product or part thereof," thus excluding used vehicles.[3] See Cal. Civ. Code § 1791.1(a); Leber v. DKD of Davis, Inc., 187 Cal. Rptr. 3d 731 (Cal. Ct. App. 2015) (holding that a used truck was not "new" as required to trigger implied warranties of merchantability and fitness under the Song-Beverly Act).

Where the sale of used goods are at issue, as in here, an implied warranty of merchantability "shall be coextensive in duration with an express warranty which accompanies the consumer goods . . . but in no event shall such implied warrant[y] have a duration of less than 30 days nor more than three months following the sale of used consumer goods to a retail buyer." Cal. Civ. Code § 1795.5(c). Thus, to recover under an implied warranty theory Plaintiffs are limited to nonconformities occurring within three months from April 18, 2015, when Plaintiffs entered into the lease. As Defendant points out, the earliest repair order is dated October 20, 2015, more than six months after

---

[3] There is a definition of "new motor vehicle" in section 1793.22(e) that includes "other motor vehicle[s] sold with a manufacturer's new car warranty." However, section 1793.22 specifically states that this definition only applies to section 1793.2(d) for express warranties, and does not apply to implied warranties. See, e.g., Victorino v. FCA US LLC, 326 F.R.D., 326 F.R.D. 282, 301 (S.D. Cal. 2018) (listing California state appellate decisions holding that this definition only applies to express warranties).

14

Plaintiffs leased the vehicle. Consequently, the Court **GRANTS in part Defendant's MIL #2** to exclude any evidence in support of Plaintiffs' breach of implied warranty claim of nonconformities occurring outside the three-month period.

**E.  Defendant's MIL #3 is GRANTED**

In **Defendant's MIL #3**, Defendant moves to exclude any and all evidence, references to evidence, testimony, or arguments regarding alleged concerns, defects, or nonconformities that were never presented to an authorized repair facility. Defendant provides the example that Plaintiff Auguste testified that various lights inside the Subject Vehicle were "constantly blinking" and bells were ringing, allegedly because of a malfunction in the pedestrian detection, night vision, and brake sensor, yet never presented the Vehicle to address these issues. Def.'s Reply ISO Def.'s MIL #3 2:23-3:2. Defendant's MIL #3 is based on Fed. R. Evid. 401, 402, and 403, that such evidence is irrelevant and will confuse the issues, mislead the jury, cause unfair prejudice, and waste time.

Defendant is correct that the Song-Beverly Act requires as its second element that a vehicle be presented to an authorized representative of the manufacturer for repair. Cal. Civ. Code § 1793.2. As such, the Court **GRANTS Defendant's MIL #3** as to any evidence of nonconformities never presented in support of Plaintiffs' claim under section 1793.2.

Plaintiffs put forth the same argument as they did in response to Defendant's MIL #2, that this objection ignores their breach of implied warranty of merchantability claim under Cal. Civ. Code § 1791.1. For the same reasons articulated above as to Defendant's MIL #2, the Court **GRANTS Defendant's MIL #3** to exclude any evidence in support of Plaintiffs' implied breach of warranty claim of nonconformities never presented that occurred outside the three-month period.

**F.  Defendant's MIL #4 is DENIED**

In **Defendant's MIL #4**, Defendant moves to exclude expert or legal opinions by Plaintiffs and their lay witnesses that the use, value, or safety of the Subject Vehicle has been substantially impaired.

The analysis of substantial impairment is an objective one as determined "within the specific circumstances of the buyer." Lundy v. Ford Motor Co., 104 Cal. Rptr. 2d 545 (Cal. Ct. App. 2001); Schreidel v. American Honda Motor Co., 40 Cal. Rptr. 2d 576 (Cal. Ct. App. 1995). As the lessors of the Subject Vehicle, Plaintiffs can give proper lay opinion about the value of the vehicle. See Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354, 369 (9th Cir. 1947) ("The owner of personal property may always testify to its value."). Case law indicates that a lay person is also qualified to testify about substantial impairment: "This definition is nothing more than a means of

describing what the average person would understand to be a defect." Ibrahim v. Ford Motor Co., 263 Cal. Rptr. 64 (Cal. Ct. App. 1989). Assuming Plaintiffs stay within the proper framework of Federal Rule of Evidence 701, they are entitled to testify to the objective uses and qualities of the vehicle and offer an objective assessment. As such, the Court **DENIES Defendant's MIL #4.**

**G. Defendant's MIL #5 is DENIED as MOOT**

In **Defendant's MIL #5**, Defendant moves to exclude Plaintiffs' expert Randall Bounds. However, Plaintiffs amended their Witness List to no longer include Randall Bounds.[4] See Pls.' Amended Witness List, ECF No. 67. As such, the Court **DENIES Defendant's MIL #5 as MOOT**.

///
///
///
///
///
///
///
///

---

[4] Defendant points out the Amended Witness List still references Mr. Bounds, however it appears to be a mistake. Listed as Plaintiffs' second witness is Dan Calef, but next to his name Plaintiffs wrote, likely erroneously, "Mr. Bounds is Plaintiffs' designated expert witness." Mr. Bounds was listed on the previous witness list, and significantly his name is not listed elsewhere on the amended list so the Court would assume Plaintiffs only intend to call Dan Calef as their expert witness.

17

**III. CONCLUSION**

For the foregoing reasons, the Court: **DENIES** Plaintiffs' MIL #1 [59]; **DENIES** Plaintiffs' MIL #2 [60]; **DENIES** Defendant's MIL #1 [62]; **GRANTS in part and DENIES in part** Defendant's MIL #2 [63]; **GRANTS** Defendant's MIL #3 [64]; **DENIES** Defendant's MIL #4 [65]; and **DENIES as MOOT** Defendant's MIL #5 [66].

**IT IS SO ORDERED.**

DATED: March 14, 2019          s/ RONALD S.W. LEW
                               **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge